**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**


THOMAS J. LAMPLEY, )  CASE NO. 1:13-CV-1102
 )
               Petitioner, )  JUDGE POLSTER
 )
               v. )  MAGISTRATE JUDGE VECCHIARELLI
 )
JASON BUNTING, )
 )  **REPORT AND RECOMMENDATION**
               Respondent. )

This matter is before the magistrate judge pursuant to Local Rule 72.2(b)(2).

Before the court is the petition of Thomas J. Lampley ("Lampley") for a writ of habeas

corpus filed pursuant to 28 U.S.C. § 2254.  Lampley is in the custody of the Ohio

Department of Rehabilitation and Correction pursuant to journal entry of sentence in the

case of *State of Ohio vs. Lampley*, Case No. 09-CR-650D (Richland County March 2,

2010).  (3/02/2010 Journal Entry, Doc. No. 6-1 at Ex. 6.)  For the reasons set forth

below, it is recommended that Lampley's petition be dismissed with prejudice.

**I. Factual Background**

The state appellate court reviewing Lampley's direct appeal noted the following

relevant facts:

> On August 28, 2009, [Lampley] was employed at the Mary
> McLeod Bethune Center ("MBCC") owned by his wife. On
> that day, [Lampley] and his wife became involved in an
> argument, during which [Lampley] operated a vehicle in the
> MBCC parking lot coming close to and almost hitting
> LaShona Bronson who was also an employee of MBCC and
> an acquaintance of [Lampley]. A dispute then arose between
> Bronson and [Lampley] as to how close [Lampley] was to

hitting her, and [Lampley] called Bronson a "bitch." Bronson telephoned her husband, David Jermain Bronson, aka J.B. Bronson. She then told [Lampley] "We going to have somebody to take care of you" and "We got something for you." J.B. subsequently came to the parking lot, but [Lampley] had already left the scene.

When [Lampley] returned to the MBCC parking lot, he encountered LaShona Bronson and her husband, J.B., who approached [Lampley] at the vehicle [Lampley] was driving. An altercation ensued. [Lampley] maintains J.B. approached the vehicle and began striking [Lampley] through the open window. J.B.'s friend, Danny McClain, had accompanied J.B. to the parking lot, and was outside the vehicle on the driver's side. [Lampley] accessed a firearm stored in the MBCC's van, and used the firearm to shoot and fatally wound J.B.

*State v. Lampley*, No. 10CA30, 2011 WL 3359989, *1 (Ohio App. Ct. Aug. 2, 2011).

## II. State Procedural History

### A.    State Trial Court Proceedings

On September 16, 2009, a Richland County grand jury issued a four-count indictment charging Lampley with: (1) intentional murder, in violation of Ohio Rev. Code § 2903.02(A), with a firearm specification; (2) violent offense murder, in violation of R.C. § 2903.02(B), with a firearm specification; (3) possessing a weapon under a disability, in violation of R.C. § 2923.13(A)(2); and (4) tampering with evidence, in violation of R.C. § 2921.12(A)(1).  (Indictment, Doc. No. 6-1 at Ex. 1.)[1]

At a trial conducted in February 2010, Lampley argued that he had acted in self defense in shooting J.B.  (*See, generally*, Trial Transcripts ("Tr."), Doc. No. 7.)  The trial

---

[1] The original indictment alleged that the offenses occurred on August 28, 2008, rather than 2009.  (Indictment, Doc. No. 6-1 at Ex. 1.)  Thereafter, the trial court granted the State's motion to amend the indictment to alleged the correct date.  (10/28/2009 Journal Entry, Doc. No. 6-1 at Ex. 3.)

2

court instructed the jury on Ohio's common law defense of self defense as follows, in

relevant part:

> Mr. Lampley is asserting the affirmative defense of self defense when he shot Mr. Bronson.  The burden of proving self defense is on Mr. Lampley.  This is one case where the burden of proof switches to the defendant.  As to self defense he must prove that he acted in self defense.  The prosecutor doesn't have to prove it didn't happen.  The defendant has to prove that it did happen, but he has a lower burden of proof called a preponderance of the evidence, and I will talk to you about that.

> \* \* \*

> To prove self defense, Mr. Lampley must prove by the greater weight of the evidence three things.  First, that he was not at fault in creating the situation giving rise to the shooting of David Bronson.  Secondly, that he had reasonable grounds to believe, and an honest belief, even if mistaken, that he was in immediate danger of death or great bodily harm and that his only means of escape from that danger was by the use of deadly force.  Third, he did not violate any duty to retreat to avoid the danger.

(Tr. 950-51.)

On February 26, 2012, the jury convicted Lampley of all counts alleged in the

indictment, and found both firearm specifications.  (2/26/2010 Journal Entry, Doc. No.

6-1 at Ex. 5.)  On March 2, 2010, the trial court sentenced Lampley to consecutive

terms of imprisonment totaling 25 years to life.  (03/02/2101 Journal Entry, Doc. No. 6-1

at Ex. 6.)

**B.     Initial State Appellate Court Proceedings**

On March 9, 2010, Lampley, through assigned appellate counsel, filed a notice

of appeal.  (03/09/2010 Notice of Appeal, Doc. No. 6-1 at Ex. 9.)  On October 29, 2010,

the state appellate court dismissed Lampley's appeal for lack of prosecution, noting

3

that, although the trial record had been transmitted to the appellate court on April 20,

2010, Lampley had not filed a brief.  (10/29/2010 Judgment Entry, Doc. No. 6-1 at Ex.

10.)

On January 28, 2011, Lampley's appellate counsel filed a motion to reopen the

appeal and file the brief *instanter*, alleging that he had inadvertently failed to timely file

the brief.  (01/28/2011 Counseled Motion for Reinstatement, Doc. No. 6-1 at Ex. 11.)

On that same date, Lampley, *pro se*, filed a motion for reinstatement of the appeal, as

well as for assignment of counsel.  (01/28/2011 *Pro Se* Motion for Reinstatement, Doc.

No. 6-1 at Ex. 13.)[2]  On January 31, 2011, Lampley filed a *pro se* application to re-open

his appeal pursuant to Rule 26(B) of the Ohio Rules of Appellate Procedure.

(01/31/2011 *Pro Se* Rule 26(B) Application, Doc. No. 6-1 at Ex. 14.)

On February 16, 2011, the state appellate court granted Lampley's counseled

motion for reinstatement, and denied his *pro se* motions.  (02/16/2011 Journal Entries,

Doc. No. 6-1 at Exs. 12, 15.)   In his brief, Lampley raised the following assignment of

error:

> The trial court erred in failing to instruct the jury on the
> lesser-included offense of involuntary manslaughter.

---

[2] In April 2010, Lampley, *pro se*, filed in the state trial court a petition for post
conviction relief under R.C. § 2953.21, in which he asserted numerous claims of ineffective
assistance of trial counsel.  (§ 2953.21 Petition, Doc. No. 6-1 at Ex. 39.)  In August 2010,
the trial court denied the petition, finding that Lampley's claims were barred by *res judicata*
because he could have raised them on direct appeal and had not done so.  (08/10/2010
Journal Entry, Doc. No. 6-1 at Ex. 41.)  Lampley, *pro se*, appealed to the state appellate
court, which affirmed the trial court's decision in March 2011.  *See State v. Lampley*, No.
10CA106, 2011 WL 915760 (Ohio App. Ct. Mar. 9, 2011).  Lampley, *pro se*, appealed the
Ohio Supreme Court, which, in July 2011, declined jurisdiction.  *See State v. Lampley*, 949
N.E.2d 1005 (Table), 129 Ohio St.3d 1411 (Ohio 2011).

(02/16/2011 State Appellate Brief, Doc. No. 6-1 at Ex. 19.)[3]  On August 2, 2011, the state appellate court affirmed Lampley's conviction and sentence, concluding that he was not entitled to an instruction on involuntary manslaughter because he had argued self defense at trial and "therefore, if believed, the evidence would support an acquittal on both the charges of murder and the involuntary manslaughter lesser included offense," thus precluding the instruction on the lesser included offense.  *Lampley*, 2011 WL 3359989 at *4.  The court also noted that there was sufficient evidence at trial to support Lampley's murder conviction.  *Id.*

In October 2011, Lampley filed a *pro se* notice of appeal and motion for delayed appeal in the Ohio Supreme Court.  (10/12/2011 Notice of Appeal and Motion for Delayed Appeal, Doc. No. 6-1 at Ex. 22.)  The Ohio Supreme Court granted the motion and, in December 2011, Lampley filed a *pro se* memorandum in support of jurisdiction, in which he raised the following propositions of law:

> I.    Did appellate court exhibit an abuse of discretion by reinstating deficient counsel.
>
> II.   Does appellate counsels deficient performance render him ineffective when that performance falls below an objective standard.

---

[3] Later in March 2011, Lampley, *pro se*, filed a motion to reconsider the appellate court's decision to grant his counseled motions, arguing that his appellate counsel was ineffective in failing to timely file his appellate brief.  (03/14/2011 Motion to Reconsider, Doc. No. 6-1 at Ex. 18.)  The record does not reflect that the state appellate court ever ruled on that motion.

On that same date, Lampley filed a motion to stay the appellate court's judgment on his § 2953.21 petition.  (03/14/2011 Motion to Stay Judgment, Doc. No. 6-1 at Ex. 47.)  On April 1, 2011, the state appellate court denied the motion, noting that it had already affirmed the trial court's decision denying Lampley's motion for post conviction relief.  (04/01/2011 Judgment Entry, Doc. No. 6-1 at Ex. 48.)

> III.  Did defendants conviction exceed the manifest weight of the evidence and violate due process of law by placing an unconstitutional burden of proof upon the defendant.

(12/15/2011 *Pro Se* Memorandum in Support of Jurisdiction, Doc. No. 6-1 at Ex. 24.) (punctuation and grammar as in original.)  On March 21, 2012, the Ohio Supreme Court declined jurisdiction.  *See State v. Lampley*, 963 N.E.2d 824 (Table), 131 Ohio St.3d 1484 (Ohio 2012).

**C.   Rule 26(B) Application for Reopening**

In October 2011, Lampley, through counsel, filed an application to reopen his appeal pursuant to Rule 26(B) of the Ohio Rules of Appellate Procedure, arguing that his appellate counsel had been ineffective in failing to argue that his trial counsel was ineffective in asserting the defense common law self defense rather than requesting jury instructions on the Castle Doctrine under R.C. §§ 2901.05(B)(1) and 2901.09(B).[4] (10/31/2011 Rule 26(B) Application, Doc. No. 6-1 at Ex. 28.)  In December 2011, the state appellate court granted Lampley's Rule 26(B) Application, and reopened his direct appeal.  (12/09/2011 Judgment Entry, Doc. No. 6-1 at Ex. 30.)

**D.   Reopened State Appellate Court Proceedings**

On February 28, 2012, Lampley, through counsel, filed a brief in the state

---

[4] Ohio's Castle Doctrine creates a presumption that the defendant acted in self defense and eliminates the common law requirement that a person retreat prior to using deadly force in certain enumerated situations.  Specifically, under R.C. § 2901.05(B)(1), "a person is presumed to have acted in self defense . . . if the person against whom the defensive force is used is in the process of unlawfully and without privilege to do so entering, or has unlawfully and without privilege to do so entered, the . . . vehicle occupied by the person using the defensive force."  Under R.C. § 2901.09(B), an individual "has no duty to retreat before using force in self-defense" when that individual "is an occupant of that [individual's] vehicle."

appellate court, in which he raised the following assignments of error:

> I.  Trial counsel was ineffective for arguing common law self defense and for failing to request that the jury be instructed on the Castle Doctrine, as codified in R.C. 2901.05 and 2901.09.  Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution; *Strickland v. Washington*, 466 U.S. 668 (1984).
>
> II.  Appellate counsel was ineffective for failing to raise a meritorious assignment of error in Mr. Lampley's direct appeal of right.  Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution; *Evitts v. Lucey*, 469 U.S. 387 (1985).

(02/28/2012 Appellate Brief, Doc. No. 6-1 at Ex. 31.)

On September 5, 2012, the state appellate court affirmed Lampley's conviction.

*See State v. Lampley*, No. 10CA30, 2012 WL 3861271 (Ohio App. Ct. Sept. 5, 2012).

The appellate court concluded that the evidence at trial did not merit such an

instruction.  *Id*. at *6.  Thus, Lampley's "trial counsel was [not] ineffective in failing to

request the jury instruction on the Castle Doctrine, as codified in 2905.01 and 2905.09."

*Id*.

On October 16, 2012, Lampley, *pro se*, filed a notice of appeal in the Ohio

Supreme Court.  (10/16/12 Notice of Appeal, Doc. No. 6-1 at Ex. 35.)  In his

memorandum in support of jurisdiction, he raised the following propositions of law:

> I.  Was trial counsel ineffective for arguing common law self defense and for failing to request that the jury be instructed on the Castle Doctrine, as codified in R.C. 2905.01 and 2905.09.  Also for failure to raise more than one plausible lines of defense and was counsels deficient performance prejudicial?
>
> II.  Did Appellate Court exhibit an Abuse of Discretion by

7

> making a determination that the Castle Doctrine was
> not warranted because the decedents body position;
> (reaching behind the back) at the time deadly force
> was used nullified the appellants claim that decedent
> was in the process of, and had unlawfully entered his
> vehicle?

> III.    Did conviction exceed the manifest weight of
> evidence and violate Due Process of Law by placing
> an Unconstitutional burden of proof upon the
> defendant and forcing him to disprove elements of the
> charged offense without the complete jury instructions
> relevant to the issues?

(10/16/2012 Memorandum in Support of Jurisdiction, Doc. No. 6-1 at Ex. 36.)

(punctuation and grammar as in original.)  On February 6, 2013, the Ohio Supreme

Court declined jurisdiction and dismissed Lampley's appeal.  *See State v. Lampley*, 982

N.E.2d 728 (Table), 134 Ohio St.3d 1450 (Ohio 2013).

### III. Proceedings in This Court

On May 15, 2013, Lampley, *pro se*, filed his § 2254 petition in this Court.  (Doc.

No. 1.)[5]  He raises the following grounds for relief:

> I.    State was not required to prove every element of the
> charged offense beyond a reasonable doubt because
> the trial court refused to give the jury proper
> instructions relevant for them to conduct their duty as
> fact-finer and weigh every element of the charged
> offense.

>     Supporting Facts: The evidence adduced at trial
> supported the statement of law that the incident took
> place as a result of a spontaneous reaction that led to
> an unfortunate fatal shooting, however; because trial
> counsel pled self defense the burden of proof was
> shifted upon the defendant and the state was never
> required to prove two mandatory elements of the

---

[5] The State does not dispute that Lampley's petition is timely.

8

offense, Purpose and Inten[t]; which are both required to sustain a conviction of Purposeful and Intentional Murder.

II.      Defendant was not afforded Due Process of Law.

Supporting Facts: The trial court refused trial counsels request for a jury instruction on voluntary manslaughter stating that defendant would have to seek the instruction upon appeal.  The defendant was also denied a crucial instruction on the Castle Doctrine as both of these instructions were a correct statement of law.  The evidence adduced at trial concluded that the defendant was lawfully inside his vehicle when the incident took place and fired at the decedent under the assumption, (even if mistaken), that he was under threat of death, or great bodily harm, when the decedent and his accomplice attempted to persuade defendant to exit the vehicle and engage in a physical altercation.  These mitigating circumstances must be weighed by a jury with the complete and relevant jury instructions.  Furthermore; the evidence does not suggest defendants actions were purposeful and intentional. The evidence, if viewed in the light most favorable to the defendant would suggest that there was no premeditation, but the incident was a result of a sudden fit of passion brought on by the mitigating circumstances surrounding the defendant at the time.

III.     Ineffective assistance of counsel.

Supporting Facts: Trial counsel failed to pursue more than one plausible line of defense, electing to pursue a self-defense argument that shifted the burden of proof upon defendant.  Also failed to request a Castle Doctrine instruction.  Appellate counsel allowed direct appeal to be dismissed – then filed a brief instanter that missed a meritorious assignment of error.

IV.     Abuse of discretion of Appellate Court for reinstating appeal and allowing continued representation by deficient counsel.

Supporting Facts: Both the State and the defendant

> filed motions for reconsideration of Appellate Court's
> 1-16-2011 decision to Reinstate appeal – all motions
> were denied.  The Public Defender's office found that
> appellate counsel further missed a meritorious claim
> that the defendant was entitled to.  The Appellate
> Court reopened the appeal but only for review of the
> meritorious claim.

(*Id*.) (grammar and punctuation as in original.)  The State filed its Answer/Return of Writ

(doc. no. 6), and Lampley filed his Traverse (doc. no. 8).  Accordingly, the § 2254

petition is ready for decision.

Because Lampley is *pro se*, this Court must liberally construe his habeas

petition. *Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985) ("The allegations of a *pro*

*se* habeas petition, though vague and conclusory, are entitled to liberal construction.

The appropriate liberal construction requires active interpretation in some cases to

construe a *pro se* petition to encompass any allegation stating federal relief.") (internal

quotation marks and citations omitted).  The State construes Lampley's petition to

assert the following arguments:

> Ground One: There was insufficient evidence to support
> Lampley's conviction.
>
> Ground Two: The trial court erred in: (a) declining to instruct
> the jury on the lesser included offense of voluntary
> manslaughter; and (b) failing to instruct the jury on the
> Castle Doctrine.
>
> Ground Three: Lampley received ineffective assistance of:
> (a) trial counsel when his trial counsel failed to request an
> instruction on the Castle Doctrine; and (b) appellate counsel
> when his original appellate counsel allowed his appeal to be
> dismissed for lack of prosecution and then failed to raise
> the Castle Doctrine issue in Lampley's original appeal.
>
> Ground Four: The state appellate court abused its
> discretion by reinstating Lampley's original appeal and

10

> allowing him to be represented by "deficient" counsel who
> failed to raise a meritorious ground for relief.

(Answer/Return of Writ, Doc. No. 6.)

## IV. Procedural Issues

### A.      Jurisdiction

A state prisoner may file a § 2254 petition in "the district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him." 28 U.S.C. § 2241(d).  The Court of Common Pleas of Cuyahoga County, Ohio sentenced Clementson. (10/14/2009 Journal Entry, Doc. No. 9-1 at Ex. 4; Sentencing Transcript, Doc. No. 9-4.) Cuyahoga County is within this Court's geographic jurisdiction.  *See* 28 U.S.C. § 115(a). Accordingly, this Court has jurisdiction over Clementson's petition.

### B.      Exhaustion and Procedural Default

A state prisoner must exhaust all available state remedies or have no remaining state remedies available prior to seeking review of a conviction via federal habeas corpus.  *See* 28 U.S.C. § 2254(b) and (c); *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v. McMackin*, 935 F.2d 790, 793 (6th Cir. 1991).  If any state procedures for relief remain available, the petitioner has not exhausted his state remedies, and a federal court must dismiss his petition.  *See Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).  The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all the petitioner's claims.  *See Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990).

11

Similarly, a federal court may not review "contentions of federal law . . . not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). When a petitioner "has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

If the State argues that a petitioner has procedurally defaulted, the Court must conduct a four-step analysis to determine whether the petitioner has indeed defaulted and, if so, whether the procedural default may be excused:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . . Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. . . . This question generally will involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims. . . . [Fourth, if] the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate . . . that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

1.     **Exhaustion - Sufficiency (from Ground One)  and Jury Instruction on Castle Doctrine (from Ground Two)**

Here, the State argues that Lampley failed to fairly present to the state courts his claims that there was insufficient evidence to convict him of murder (Ground One) and that the trial court erred in failing to given a jury instruction on the Castle Doctrine (from Ground Two).  Other than generally asserting that "all grounds for relief contained in [his] petition have been placed within the States [*sic*] jurisdiction through the Appellate process and the State has refused that jurisdiction" (Response at 1, Doc. No. 8), Lampley has not shown that he presented these claims to the state courts.  The record does not reflect that he presented these claims.  With respect to the trial court's failure to instruct the jury on the Castle Doctrine, to the extent that Lampley argues that he exhausted this claim by asserting it as the basis for an ineffective assistance of counsel claim, that argument fails.  It is well established that presenting claims in the context of ineffective assistance of counsel is not sufficient to "fairly present" them as independent claims to state courts.  *See, e.g., Wagner v. Smith*, 581 F.3d 410, 417-18 (6th Cir. 2009) (finding that the petitioner failed to exhaust a prosecutorial misconduct claim where he presented it to the state courts in the context of ineffective assistance of counsel, noting that doing so "did not present the *prosecutorial misconduct* claim to the state court in the same legal and factual terms as Petitioner did before this Court") (emphasis in original).  Accordingly, Lampley failed to fairly present either his first ground for relief or that portion of his second ground for relief based on the lack of an instruction on the Castle Doctrine to the state courts.

13

**2.      Procedural Default - Sufficiency (from Ground One)  and Jury Instruction on Castle Doctrine (from Ground Two)**

Generally, where a claim is unexhausted, this Court dismisses the habeas petition without prejudice to allow the petitioner to return to state court to pursue his available remedies.  *See* 28 U.S.C. § 2254(c); *Rose v. Lundy*, 455 U.S. 509 (1982). However, in this case, these grounds for relief are also procedurally defaulted.

The errors at issue in these grounds for relief – sufficiency of the evidence and the trial court's failure to instruct the jury on the Castle Doctrine –  arise out of the record of proceedings in the trial court, and, thus, Lampley could have raised them on direct appeal.  He failed to do so and, under Ohio law, *res judicata* now prohibits him from raising these issues in any post-conviction proceeding.  *See State v. Cole*, 443 N.E.2d 169, 171, 2 Ohio St.3d 112, 113 (Ohio 1982); *State v. Perry*, 226 N.E.2d 104, 10 Ohio St.2d 175 (Ohio 1967) (holding that *res judicata* bars a criminal defendant from raising in post-conviction proceedings those claims that could have been raised on direct appeal).  Thus, there are no longer any state court remedies still available to Lampley with respect to these claims, and this Court may deem them procedurally defaulted. *See Gray v. Netherland*, 518 U.S. 152, 161-62 (1996) ("Because the exhaustion requirement 'refers only to remedies still available at the time of the federal petition,' *Engle v. Isaac*, 456 U.S. 107, 125, n.28 (1982), it is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law,' *Castille*[, 489 U.S. at 351].").

Because Lampley procedurally defaulted these grounds for relief, this Court may review them only if he can demonstrate (1) cause and prejudice for the default*, see*

14

*Gray*, 518 U.S. at 162 ("[T]he procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground[6] for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default."), or (2) that this Court's failure to review the merits of his claim will result in a fundamental miscarriage of justice, *Coleman*, 501 U.S. at 750.  Lampley's response in support of his petition can be liberally construed to argue that his appellate counsel's failure to raise these claims on direct appeal constitutes cause for his procedural default.  This argument, however, lacks merit.

Although a petitioner may satisfy the "cause" prong of the "cause-and-prejudice" test by showing  ineffective assistance of counsel, *see Murray v. Carrier*, 477 U.S. 478, 488 (1986), to demonstrate such ineffective assistance, a petitioner must demonstrate both that his counsel's performance was "outside the wide range of professionally competent assistance," and that the allegedly ineffective assistance caused him prejudice*, see Strickland v. Washington*, 466 U.S. 668, 690, 693 (1984).  Further, "the exhaustion doctrine . . . generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default."  *Murray v. Carrier*, 477 U.S. at 488-89.

In this case, Lampley did not raise an ineffective assistance claim based on his appellate counsel's failure to argue that there was insufficient evidence to convict him.

---

[6] The Sixth Circuit has determined that "the application of *res judicata* is an adequate and independent state ground justifying foreclosure of constitutional claims in habeas." *Mason v. Mitchell*, 320 F.3d 604, 628 (6th Cir. 2003).

15

Accordingly, he cannot now assert ineffective assistance as cause for his procedural default of his claim that there was insufficient evidence to support his conviction. Further, although – in his reopened appeal –  Lampley contended that his trial and original appellate counsel were ineffective in failing to argue that he was entitled to an instruction on the Castle Doctrine, this argument cannot now excuse his procedural default because Lampley's argument fails the prejudice prong of *Strickland*, which is discussed in more detail in Section V, regarding his claim of ineffective assistance of trial counsel based upon the Castle Doctrine.  Accordingly, even construing Lampley's argument to assert ineffective assistance as a cause for his procedural default of these claims, this Court cannot conclude that, even if appellate counsel erred in failing to raise these issues on direct appeal, the outcome of Lampley's proceedings would have been different.  *See Strickland*, 466 U.S. at 694.  Thus, appellate counsel's failure to raise this issue on direct appeal cannot constitute cause for Lampley's procedural default.

Further, Lampley offers no argument that this Court's failure to review the merits of these grounds for relief will result in a fundamental miscarriage of justice.  A petitioner may satisfy the fundamental miscarriage of justice exception to procedural default by submitting evidence that a constitutional violation has resulted in the conviction of someone who is actually innocent.  *See Dretke v. Haley*, 541 U.S. 386, 393 (2004).  Lampley neither asserts, nor offers evidence, that he is actually innocent.  Accordingly, there is no excuse for, or exception to, his procedural default, and these claims are barred from federal habeas review.[7]

---

[7] Lampley's petition can be reasonably construed to assert additional grounds for relief not discussed by the State.  These are:  (1) the trial court erred in failing to instruct

16

**C.      Mootness - Ineffective Assistance of Original Appellate Counsel (from Ground Three)**

In his third ground for relief, Lampley argues that his original appellate counsel was ineffective in allowing Lampley's direct appeal to be dismissed for lack of prosecution, and, thereafter, in filing a brief that failed to raise the issue of his trial counsel's failure to request a Castle Doctrine instruction.  The State argues that this claim is moot.

Article III, Section 2 of the United States Constitution requires the existence of a case or controversy throughout all stages of federal judicial proceedings.  "Article III denies federal courts the power to decide questions that cannot affect the rights of litigants in cases before them." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990) (internal quotation marks, citations and alteration omitted).  Thus, "[t]o invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Id*.  Here, the State asserts that, because the state appellate court reinstated Lampley's original appeal and permitted his original appellate counsel to file a brief, his claim arising out of his appellate counsel's failure to prosecute his original appeal is moot.  Similarly, the State argues that, because the state appellate court thereafter

---

the jury on involuntary manslaughter (from Ground One); (2) the trial court erred in failing to instruct the jury on purpose and intent (from Ground One); and (3) his trial counsel was ineffective in failing to pursue "plausible lines of defense" (from Ground Three).  However, Lampley failed to fairly present any of these claims to the state courts and, because he is now barred from doing so by *res judicata*, these claims are all unexhausted and procedurally defaulted.  Lampley's response contains no argument regarding cause and prejudice for his procedural default of these claims.  Accordingly, to the extent that his petition can be construed to assert them, these claims are barred from federal habeas review.

reopened Lampley's appeal and permitted his subsequent appellate counsel to raise the issue of his trial counsel's failure to request a Castle Doctrine instruction, his claim arising out of his original appellate counsel's failure to raise that issue is also moot.

The State's argument is well taken.  To the extent that Lampley's appellate counsel was ineffective in failing to timely file his original brief, any injury from that error was redressed by the state appellate court's decision to reinstate Lampley's appeal and permit his counsel to file a brief.  Further, to the extent that his appellate counsel was ineffective in not arguing that trial counsel was deficient in failing to request an instruction on the Castle Doctrine, any injury from that error was redressed by the state appellate court's decision to reopen Lampley's appeal and permit his subsequent appellate counsel to raise that argument.  Lampley has not shown how, despite the state appellate court's decisions reinstating and reopening his direct appeal, he continues to suffer injury from these alleged errors.  Accordingly, Lampley's claims arising out of the allegedly ineffective assistance of his original appellate counsel are moot and, thus, barred from federal review.  Accordingly, these claims should be dismissed.

**D.     Non-Cognizable Claims**

**1.     Lesser-Included Offense Jury Instruction (from Ground Two)**

In his second ground for relief, Lampley argues that he was denied due process when the trial court declined to instruct the jury on the lesser included offense of voluntary manslaughter.  The State argues that, because the trial court's decision did not render Lampley's trial fundamentally unfair, this ground for relief is not cognizable

18

on habeas review.

The State's argument is well taken.  In a federal habeas action, errors in jury instructions are generally not cognizable unless they deprive a defendant of a fundamentally fair trial.  *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Wood v. Marshall*, 790 F.2d 548, 551-52 (6th Cir. 1986) ("In a habeas proceeding, allegedly improper jury instructions must be shown to have infected the accused's trial to such a degree to constitute a clear violation of due process.  The petitioner must show more than that the instructions are undesirable, erroneous or universally condemned.") The Sixth Circuit has held that, in a non-capital case, the failure to instruct on a lesser included offense, even when requested by counsel, is not of the "character or magnitude which should be cognizable on collateral attack."  *Bagby v. Sowders*, 894 F.2d 792, 797 (6th Cir. 1990) (*en banc*).  While recognizing that it was "conceivable" that the failure to give such an instruction in a non-capital case might be cognizable on federal habeas review in certain circumstances, such as where the failure to instruct was arbitrary and unsupportable, and "resulted in a fundamental miscarriage of justice," the Sixth Circuit emphasized that these situations would occur only "under the most unusual circumstances," such as where the failure to instruct "likely resulted in the conviction of an innocent person."  *Id*. at 795.

Here, Lampley fails to demonstrate that his case involves the "most unusual circumstances" contemplated by *Bagby*.  Where a state court has reviewed a petitioner's request for a lesser-included offense instruction and concluded that it was not warranted by the evidence presented at trial, "that conclusion is axiomatically

19

correct, as a matter of law." *Bagby*, 894 F.2d at 795.

Further, the state appellate court's reasoning on this issue is sound. In its first decision affirming Lampley's conviction, the court set forth the standard, under Ohio law, for requiring a court to instruct the jury on a lesser-included offense:

> If the evidence adduced on behalf of the defense is such that if accepted by the trier of fact it would constitute a complete defense to all substantive elements of the crime charged, the trier of fact will not be permitted to consider a lesser included offense unless the trier of fact could reasonably find against the state and for the accused upon one or more elements of the crime charged, and for the state and against the accused on the remaining elements, which, by themselves, would sustain a conviction upon a lesser included offense.

*Lampley*, 2011 WL 3359989 at *3 (quoting *State v. Wilkins*, 415 N.E.2d 303, 308, 64 Ohio St.2d 382, 388 (Ohio 1980).  The appellate court reasoned that, because Lampley had asserted self-defense, the trial court was not required to instruct the jury on the lesser-included offense of voluntary manslaughter:

> At the trial herein, Appellant argued the affirmative defense of self defense. Appellant's argument to the jury was he shot J.B. in self defense; therefore, if believed, the evidence would support an acquittal on both the charges of murder and the involuntary manslaughter lesser included offense. Based upon the case law set forth above, we find the trial court did not err in electing not to instruct the jury on the lesser included offense of involuntary manslaughter. Further, upon our review of the record, the evidence at trial was sufficient to sustain a conviction on the offense of murder; therefore, the trial court did not err in its instructions to the jury.

*Lampley*, 2011 WL 3359989 at * 4.  Lampley does not explain, how, despite the sound reasoning of the state appellate court, the trial court's failure to instruct the jury on voluntary manslaughter rendered his trial fundamentally unfair or otherwise resulted in a

20

fundamental miscarriage of justice.  Accordingly, Lampley fails to raise a constitutional claim, and, because this ground for relief is not cognizable on habeas review, it is recommended that it be dismissed.[8]

### 2.    Ground Four

In his fourth ground for relief, Lampley asserts that the state appellate court abused its discretion in reinstating his appeal and allowing "deficient" counsel to represent him.  Lampley does not identify the constitutional rights at issue in this ground for relief.  To the extent that he argues that the appellate court deprived him of his right to the effective assistance of appellate counsel, this argument is moot, given that the state appellate court reopened Lampley's appeal and permitted Lampley to raise the issue that he asserts his original counsel ineffectively failed to raise.  Absent some evidence or argument that the state appellate court's decision rose to the level of a constitutional violation, this claim is not cognizable on habeas review.  *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("We have stated many times that federal habeas review does not lie for errors of state law. . . . In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); *see also Sinistaj v. Burt*, 66 F.3d 804, 808 (6th Cir. 1995) (observing that a state court's abuse of discretion does not necessarily rise to the level of a constitutional violation).  Accordingly, this ground for relief should be

---

[8] The State argues that Lampley's argument based on the trial court's failure to instruct the jury on the Castle Doctrine (from Ground Two) is not cognizable on habeas review because he fails to demonstrate that the omission rendered his trial fundamentally unfair.  However, as discussed previously, Lampley procedurally defaulted that claim, which precludes it from federal habeas review.  Thus, this Court need not determine whether it raises a cognizable issue in this context.

dismissed.

## V. The Merits of Lampley's Remaining Claim

The Antiterrorism and Effective Death Penalty Act of 1996 ( "AEDPA") altered the

standard of review that a federal court must apply when deciding whether to grant a writ

of habeas corpus.  As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim resulted in a decision that was contrary to, or involved
> an unreasonable application of, clearly established Federal law, as determined
> by the Supreme Court of the United States; or resulted in a decision that was
> based on an unreasonable determination of the facts in light of the evidence
> presented in the State court proceeding.

A writ of habeas corpus may issue only if the state court's decision is contrary to clearly

established federal law or was based on an unreasonable determination of the facts in

light of the evidence.  *See Carey v. Musladin*, 549 U.S. 70 (2006); *Williams v. Taylor*,

529 U.S. 362, 379-90 (2000).  Law is "clearly established" only by holdings of the

Supreme Court, not its dicta, and the law must be clearly established at the time of the

petitioner's conviction.  *See Carey*, 549 U.S. at 74.

Courts must give independent meaning to the phrases "contrary to" and

"unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may
> obtain federal habeas relief with respect to a claim adjudicated on the merits in
> state court.  Under the statute, a federal court may grant a writ of habeas corpus
> if the relevant state-court decision was either (1) "*contrary to* . . . clearly
> established Federal law, as determined by the Supreme Court of the United
> States," or (2) "*involved an unreasonable application of* . . . clearly established
> Federal law, as determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 404-05 (emphasis added by the quoting court).  A decision is

"contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by Supreme Court holdings on a question of law or if it faces a set of facts materially indistinguishable from relevant Supreme Court precedent and still arrives at an opposite result.  *Id.* at 405-06.   A decision involves an unreasonable application of federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand.  *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).  "In order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been objectively unreasonable."  *Id.* at 520-21 (internal citations and quotation marks omitted).  This Court applies this deferential standard of review to the state courts' rulings on Lampley's remaining claim.

In his third ground for relief, Lampley claims that he was denied the effective assistance of trial counsel when his counsel failed to request an instruction on the Castle Doctrine.  He raised this claim in state court in his Rule 26(B) Application to reopen his appeal.  In assessing claims of ineffective assistance of counsel, courts apply the familiar standard of *Strickland*, which requires a petitioner to demonstrate both that his counsel's performance was deficient, and that the allegedly ineffective assistance caused him prejudice*:*

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant

23

must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687.   "Both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact entitled to *de novo* review."

*Combs. v. Coyle*, 205 F.3d 269, 278 (6th Cir. 2000).

In deciding Lampley's claim on this issue, the state appellate court cited to *Strickland*.  *See Lampley*, 2012 WL 3861271 at *2.  The court reviewed the testimony at trial and concluded that the evidence did not support an instruction on the Castle Doctrine:

Pursuant to the above testimony we find the evidence does not support a conclusion J.B. was in the process of entering or inside the Appellant's vehicle at the time of the shooting. Rather, Appellant himself testified J.B. would not have been leaning inside the vehicle at the time Appellant fired the gun because J.B. was shot in the side, not in the face. And while Appellant claims J.B. had earlier reached inside making contact with his face, this occurred prior to the shooting and after Appellant had moved his vehicle and parked behind Davis' vehicle. The trial testimony of Angela Davis and Appellant himself demonstrates although J.B. was "leaning" in the vehicle during the first confrontation with J.B., the evidence indicates at the time of the subsequent confrontation and shooting, J.B. approached the passenger side of the vehicle, and was not in the process of entering or inside the vehicle. Appellant testified J.B. was reaching behind his back, not reaching into his vehicle. Accordingly, we do not find Appellant's trial counsel was ineffective in failing to request the jury instruction on the Castle Doctrine, as codified in 2905.01 and 2901.09, where the evidence does not warrant the instruction herein.

*Lampley*, 2012 WL 3861271 at *6.

24

Lampley's response in support of his argument can be construed to contend that the state appellate court unreasonably applied the prejudice prong of *Strickland* by determining that the evidence did not support an instruction on the Castle Doctrine.

Ohio's Castle Doctrine creates a rebuttable presumption that a defendant acted in self defense where "the person against whom the defensive force is used is in the process of unlawfully and without privilege to do so, entering, or has unlawfully and without privilege to do so, entered the residence or vehicle occupied by the person using the defensive force."  Ohio Rev. Code § 2901.05(B)(1).  Further, in certain enumerated circumstances, the doctrine obviates the duty to retreat that is required by the common law doctrine of self defense.  As relevant to this case, under Ohio Rev. Code § 2901.09(B), "a person who lawfully is an occupant of that person's vehicle or who lawfully is an occupant in a vehicle owned by an immediate family member of the person has no duty to retreat before using force in self-defense or defense of another."

Under Ohio law, where a defendant asserts an affirmative defense, "the trial court is obligated to provide an instruction to jury on that issue only if the evidence adduced at trial is of a nature and quality sufficient to support the defense and to submit the issue to the jury."  *State v. Robinson*, 726 N.E.2d 581, 584, 132 Ohio App.3d 830, 835-36 (Ohio App. Ct. 1999) (citing *State v. Melchior*, 381 N.E.2d 195, 56 Ohio St.2d 15 (Ohio 1978)).  Accordingly, in order for the trial court to have been required to instruct the jury on the Castle Doctrine – and thus, for Lampley to have been prejudiced by trial counsel's failure to request such an instruction – the evidence at trial must have supported the conclusion that, prior to being shot by Lampley, JB was attempting to enter Lampley's vehicle.  A review of the relevant trial testimony reveals that the state

25

appellate court's description of that testimony is accurate, and that the evidence did not support the conclusion that JB was attempting to enter Lampley's vehicle.   For example, Angela Davis, who witnessed the altercation, testified that Lampley shot JB as JB was standing outside the passenger side window of the minivan.  (Tr. 806-11.) Lampley testified that he fired at JB after JB threatened to "blow [his] head off" and reached behind his back as he was standing outside the minivan.  (Tr. 856-63.) Indeed, during his cross-examination, Lampley disputed the testimony of Cody Richards, a state witness who testified that he saw JB leaning into the minivan prior to being shot. Lampley, in substance, testified that JB was not leaning inside the vehicle or he would have been shot in the face, rather than in the side. (Tr. 919.)

The evidence at trial did not support an instruction on the Castle Doctrine, and, because the trial court was not required to give such an instruction, this Court cannot conclude that Lampley was prejudiced by his trial counsel's failure to request it.  Thus, the state court's determination that Lampley was not prejudiced by his counsel's alleged error[9] in this context was neither contrary to, nor involved an unreasonable application of, clearly established federal law, and this portion of Lampley's third ground for relief should be dismissed as without merit.

---

[9] In addition to failing the prejudice prong of the *Strickland* test, Lampley's claim fails the deficient-performance prong because, given the evidence at trial, his counsel's decision not to pursue a claim of self-defense based on the Castle Doctrine was "sound trial strategy."  *Strickland*, 466 U.S. at 689 ("[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.") (internal quotation marks omitted).

## VI. Conclusion

For the reasons given above, Lampley's petition should be dismissed with prejudice.


Date: September 27, 2013                     /s/ Nancy A. Vecchiarelli
                                          United States Magistrate Judge

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111.**